But if you want to talk about Urbini, you can. If you give me more time, maybe. Thank you. I'm Daniel Bake, and I represent Ms. Rodriguez, who is actually here today. Mainly there are two issues in this case. The first issue is whether the Comcast improperly denied Ms. Rodriguez a medical leave with a specified return-to-work date, and her doctors had recommended as a reasonable accommodation for her post-brain surgery disabilities. And again, this is unlike many disability cases I've had. This is a brain issue, not an appendectomy, not something else. The second issue is whether, as the district court ruled, Ms. Rodriguez's disability claims were conclusively and indisputably barred by her alleged inconsistent position in applying for and receiving SSA disability benefits. We submit, Your Honor, that the Rodriguez doctor's recommended medical leave was a very reasonable accommodation. It was based on the doctor's prognosis of recovery. All the evidence showed that she was improving. There were two specific return-to-work dates, October 15, 2015, and April 19, 2016. So thus, they were not indefinite, as Comcast asserts. The standard articulated in Cleveland, which this court followed both in Smith and Norris, another one of my disability cases, and what you have here is a serious surgery for a serious brain problem. She had cavernous brain malformation, which meant that her brain was leaking. So she had surgery on April 27, which was successful, and proper time to heal was all that was needed. All the medical evidence showed that she was healing as predicted. The post-op symptoms were all temporary and not a serious medical concern, but she needed all this time to heal. And as an example, on November 9, 2015, Comcast asked if Ms. Rodriguez could return to work. Dr. Tortorici, her primary care physician, says she could return to work on April 19, 2016, a very specific date. But what did they do? They kept rejecting her request for leave. December 9, just a few weeks later, they asked the same question again. Can she come back to work? And they say, oh, let's see if she could work in an alternate position, when they very well knew that that was not the case. The standard in Cleveland is very clear, which this court has followed, and that is that they rejected any doctrine that a disabled employee's disability benefit application to Social Security, representing that she was disabled and unable to work, would statutorily bar her disability discrimination claims. But she's got to give some sort of an explanation under Cleveland. And the district court here looks at the explanation and says it's not sufficient. How do you respond to what's written in the order? It followed Cleveland to a T. Her statement at the time, which was September 2015, was truthful. She was not able to work at that point. She needed more leave, and in April she was. But look how we got here, Your Honors. I'm still working on this. But the district court says, but she's continuing to receive benefits under Social Security in order to be eligible for benefits under Social Security. It has to be a disability that lasts at least 12 months. She never notifies Social Security that she's better. I mean, help me get past that. She doesn't have to. The Social Security was very clear. The Social Security award notice says that they have special rules, and you can continue your cash payments. If you look at the record, 2ER61, it says very clearly, if you go to work, we have special rules that let us continue your cash payments and health care coverage. And she was told she could work, but she was told if you get a full-time job, let us know. But nothing in the Social Security process does it say, you know, are you able to work. It's only looking at the disability. Wait a minute. Social Security disability payments are premised on an inability to work. And Cleveland says, if you say at the time you apply you're unable to work, that's being truthful, and she was. She didn't get any benefits until months after she was terminated. In fact, she was examined by the Social Security doctor in January of 2016 and found that a lot of her things were healing. But, again, she didn't have a choice here. What did they do? She had short-term disability, long-term disability, and vacation pay. She has her surgery on April 28th. I'm sorry, on April 27th. On April 28th, the day after her surgery, her 26 weeks of short-term disability was canceled. And they would not, so she had no short-term disability, no long-term disability. They didn't even give her her vacation pay. She had no money. So in September she applies for disability. But does that mean she wasn't able to work in April of 2016? The problem, as I read it from the district court, is not that she applied for it, but that it lasted too long and that she was making representations or failing to notify the SSI people. The problem is not, in the district court's view, the application, nor the initial award of benefits. Yeah, but she was unable to get another job, which is what she wanted to do. And the fact that she continued to take payments— How relevant it is, she was offered, once the lawsuit's filed, she's offered to return to her job under the same conditions and without preconditions. And she turns it down. They refused to give her any compensation that she had lost at that point. And you bring up a good point. The letter in September of 2016 clearly stated and acknowledged, the first thing in the letter says, we were recently informed that your medical issues are resolved and you are no longer medically restricted from working. When I asked Comcast, are you going to compensate her? No. There were no, you know, if she had said, I'll go back to work, they wouldn't have given her any money for her losses, for her medical bills, or anything else. But you would have still had your lawsuit, right? What's that? You would still have had your lawsuit against them for those amounts. No. We would waive that. If we went in with no conditions— I see nothing in the letter that requires you to waive that. It says in the letter that they clearly, it's unconditional offer. In other words, this would prohibit her from going back. I read the word unconditional and mean unconditional, meaning there's no condition on you. Here's your job back. Take it. I see nothing in there that says you have to forfeit the lawsuit that you're bringing out. Yeah, but this was the second case that offered reinstatement, and they didn't do it. They didn't honor it. And I explained very clearly— I don't understand what you just said. What do you mean the second case? Comcast made the same offer in another case of disability. We accepted that offer, and they didn't honor it. And I discussed that with Comcast's attorney. I said, look, this was offered before. I need some guarantee here. There was nothing. And you notice it's sent directly to my client when they knew I was representing her. This letter was not sent to me, but it was contacted to me by Ms. Rodriguez. But my point here is that, clearly, they had taken away all of her income that she was entitled to. And if you look at the issue clearly on what Comcast says is undue hardship, they said, oh, well, that's irrelevant here. But according to the law, it's very clear that it's unlawful to make a reasonable accommodation for an employee who has a physical disability unless it will impose an undue hardship. And Comcast here in their footnote, in their brief, says basically, well, that's irrelevant here. Well, that means there is no defense to what they did. And your question, Your Honor, is going to what happened later. This should not have been a choice for her. She should have been able to wait until April so she could go back to work. All the medical evidence in this case clearly shows there was no dispute about the medical evidence. They all said it was temporary. They said she was healing. What did they have? They even had their own doctor, Dr. Liss, and they didn't consult their own doctor. So you had a call on December 2nd of 2015, Ms. Loewenberg, the Comcast leave of absence specialist, Ms. Heck, the HR, and Ms. Stauffer, an attorney who dealt with terminations a dozen times a week. And the record is very clear. They didn't even discuss the return to work date. They had no medical evidence. And when I questioned Ms. Stauffer and her deposition, she says, well, I disagree with this doctor, without any medical evidence whatsoever. So if you look forward and say, you know, well, you know, look, she's still getting benefits. She had no choice. She needed some money at the time. And what happened here? They basically are benefiting from their unclean hands in cutting off her benefits. If you look in the record, there's no evidence they ever gave her a short-term disability. They didn't even give her her vacation pay that she could have had, which would have prevented her from applying for Social Security. And she didn't get her vacation pay until well after she was terminated. They also said, the court ruled that we shouldn't bring up the brain surgeon, the neurologist. They didn't know. They did know. If you look at 5ER 1100-1101 and 5ER 1097, my client told them that she was seeing her neurologist, that she was seeing a specialist, and it's in their answer key system, which is a software program that basically whenever the client would contact them or any of these people that were working on her case, it went into a program. And it was all there. Could you address the alternative argument that Comcast is making? Whether you want to call it indefinite or not, the leave that was requested was very long, and I think they're saying it was longer than is required as a reasonable accommodation. Well, they terminated her after six and a half weeks after her surgery. They terminated her on November 16th by phone. Then they said that was a mistake. They terminated her on December 15th, seven and a half months after her surgery. So it's not really a long period of time. There were only two. The doctor said beginning, when she needs six months, she needs six months. It was progressing slowly. So they said, we have a six-month recovery deadline, and they gave it in April. Her brain surgeon actually released her to work in March, and he signed that order in January of 2016. So it was very clear that all the evidence was pointing that she was getting better. Her surgeon was a very famous surgeon here at UCSF, San Francisco. And he had had hundreds of these operations, and he was not alarmed at all about her symptoms. She had vision issues, balance issues, and speech issues, and those all healed. And the evidence is in the record how she went to the Comcast store, and she was seen by them. That was the purpose of that letter. And what is your view as to the maximum length of leave that would be a reasonable accommodation? Is that a question of law, or would that depend on the circumstances of the employer? Well, actually, that's very interesting because the courts say all throughout that whether what's a reasonable leave of absence is a question of fact for the jury. I'd like to reserve the rest of my time if I could. Thank you. Thank you. May it please the Court? Robin Largent on behalf of Defendant Apple Lee Comcast. I want to start this morning by explaining that I'm very sympathetic to what happened to Ms. Rodriguez in terms of her medical conditions, suffering, a massive brain hemorrhage, and the effect that it's had on her life. You may be sympathetic. It doesn't sound as though your client was. Comcast was sympathetic as well. There were a lot of misstatements of fact in Plaintiff's Counsel's argument here this morning that I want to address. But in fact, Comcast didn't want to end the employment relationship with Ms. Rodriguez. Comcast tried to accommodate Ms. Rodriguez as best as it could within the confines of the applicable law. They granted her over nine months of consecutive, successive, continuous leaves of absence. They tried to explore whether it was possible for her to do some sort of other sedentary job prior to terminating the employment relationship. The information they got back from her treating doctor was that she could not and that she would need at least another six months off in order to assess whether she could return to work. At that point in time, based on all of the information that Comcast had before it, which we'll discuss, Comcast determined that the leave request at this point, based on having already granted a number of successive leave requests that did not successfully enable her to return to work, which is the whole purpose of a reasonable accommodation under disability law, Comcast determined that the extension of a leave request, based on essentially the same exact symptoms as had been presented in each of the prior leave requests, but this time for an even longer amount of time requested off, that this was actually a request for indefinite leave that wasn't likely to enable her to return to work at the conclusion of that extension, just as the prior leaves had not successfully enabled her to return to work. Only at that point in time did Comcast make the decision to administratively terminate her employment with a full right to rehire. If we're wrong and you are able, your condition improves and you're able to come back to work, contact us and let us know. That never happened, not in January 2016, February 2016, March, April, or at any time thereafter. Instead, Ms. Rodriguez chose to pursue her application for Social Security Administration benefits, and she was examined actually prior to her termination from Comcast. It was in December of 2015. Based on her statements to the SSA, based on the examinations of various doctors before the SSA, the SSA granted her application for disability benefits, noting that she did not have the ability to perform her prior work or any equivalent work. Importantly, they rated her as what is known as MINE, and that stands for Medical Improvement Not Expected, and that was based on the information from Ms. Rodriguez and all of the medical examinations that were conducted before the SSA. Based on that rating, the SSA decided and told Ms. Rodriguez, we won't review your case again for another five to seven years. That's not what the SSA does if they have reason to believe that an employee is going to be able to return to work in the near future, that the employee's medical condition is temporary, or that it's going to resolve soon, which is what Ms. Rodriguez is telling the court in this case, that in December she thought she'd be able to return to work shortly. It was temporary. The problem is that there's no evidence whatsoever that Ms. Rodriguez ever told the SSA that her condition was temporary, that it was expected to be short-lived, that she'd be able to return to work in a mere three months or less. To get benefits, all she needed to tell SSA was that it met the definition of a disability, which requires that it has lasted or can be expected to last at least 12 months. And from March of 2015, when the injury occurred, until April 2016, when she says she wanted to be able to come back, would be 13 months. So I guess I'm not seeing the contradiction there because that seems entirely consistent with what she told you in December. I appreciate Your Honor's point, and let me explain. At the time that Ms. Rodriguez filed her application for SSDI benefits in approximately September of 2015, it's true that all we know she told the SSA at that point in time was that she'd been disabled since March of 2015. She was still disabled. That was true at that point in time. And depending on who you believe, which doctor, Ms. Rodriguez, that remained true until at least January of 2016, probably later. The problem is that she has to show that her continued receipt of these benefits was consistent or somehow explainable in light of the inconsistent position she's taking in this case, which is that I was qualified. What she's telling the court in this case and what she told the district court is, I was able to return to work as of January 2016. That was a month after Comcast administratively terminated her employment. However, her SSA application was approved in January 2016. She was given retro benefits going back to September. At that time, the SSA expressly told her, we're making this decision, we're rating you mine, we're approving these benefits, and we won't review your case again until 2022, based on the information that you have provided to us in your application and in the investigation process. She was specifically told, you have a duty to report any relevant changes to the SSA. One of those relevant changes includes, rather obviously, any change to her medical condition or her ability to return to work. At no point in time, at no point in time, not in early 2016, or even up until the time the district court ruled on summary judgment in this case in late 2017, did Ms. Rodriguez ever notify the SSA that her condition had improved or that she had been able to return to work. There are at least two court cases holding that, in this type of setting, where an individual continues to receive these total disability benefits from the SSA, that's tantamount to ongoing representations of continued disability during that time period. I'm sorry to interrupt you, but could you address a statement made by opposing counsel, and I read it also in the briefs, that Comcast terminated her short-term disability benefits. The strong implication was improperly terminated her short-term disability benefits. Could you address that and tell me both, did it happen? Was it improper? And finally, what, if anything, is the relevance of that? Yes, Your Honor, and I'm glad the court raised that. With respect to Ms. Rodriguez's application for short-term disability benefits, first I want to make clear there's no claim for wrongful denial of short-term disability benefits from a private insurance carrier in this case. It's not really before the court. So help me explain that. So it's a private carrier, it's not Comcast? Correct. So it's the private carrier who denies? Correct. Is it under some sort of an ERISA plan? Correct. And who's the administrator of the ERISA plan? I believe it's either Cedric or MetLife. But it's an ERISA plan in connection with Comcast? Correct. Okay. But what happened is originally her application for short-term disability benefits was approved, and she was paid short-term disability benefits. Then, due to a mistake on the part of the carrier, she had some short-term disability paid out the prior year due to a work comp-related injury, and so they thought she had exhausted her entire amount of short-term disability that she had available to her during the planned year. You know, you get a maximum amount of benefits in a 12-month period, basically. So they cut it off. Ms. Rodriguez later questioned that, you know, is that correct? And the carrier said, you know what, we made a mistake. And this is in August of 2015, and the record site is 1098 for that. The carrier said, we made a mistake, you're right, we shouldn't have cut off your short-term disability benefits, and we're going to pay you retroactively back to the time period you should have been paid. That was before she applied for SSDI, before she applied for long-term disability. So it really is a red herring. It's being made a big issue out of by plaintiff in this case, but it really is not a relevant issue before the court. It was resolved. You were starting to say a moment ago, I think, that the fact that she continued to receive benefits as a basis for estoppel, but given that you fired her in December, why is it appropriate for us to look at all her conduct after the firing as sort of retroactively justifying your decision to terminate her? I think a couple of reasons. First of all, like I said, there are at least two courts who have held that the continued receipt of SSDI benefits, based on sort of an ongoing implied representation that you're totally disabled, is inconsistent with taking a position that during that same time period, even if it's after termination of employment, you're qualified and able to perform the essential functions of your job. That's what we have here. And those cases are Lincoln v. Momentum Systems. That's a District Court of New Jersey case from 2000 that was cited in our brief. The site is 86 F. Supp. 2nd, 421. And then EEOC v. Greater Baltimore Medical Center, and that's a Fourth Circuit case from 2012. Both of these cases post-date Cleveland v. Policy Management, the U.S. Supreme Court case on judicial estoppel in this context. And in the EEOC case, the court specifically explained that, you know, this continued passive receipt of SSDI benefits is enough to invoke the doctrine of judicial estoppel. Additionally, I think it's important to note, as a matter of fact, you know, it's not just that Ms. Rodriguez, you know, made these representations to the SSA, continued to receive the benefit of those representations to the SSA by getting Social Security disability benefits over two years after she was administratively terminated from Comcast. But also, like I said earlier, when Ms. Rodriguez was separated from her employment, she was given a right to rehire. She was told, contact us if your condition improves and you're able to return to work. She didn't. In fact, when she filed this lawsuit in mid-2016, so we're about six, seven months after her termination at this point, her attorney sent Comcast a letter saying she can work. She's able to return to work. So what did Comcast do? Again, well, that's great news. We didn't know that. If that's the case, unconditional offer of reinstatement. Come have your job back. Why did you send the letter to her directly? She was represented. The lawsuit had been brought. The contact is supposed to go through the lawyer. I'm actually not sure, sitting here today, whether the letter was sent to the lawyer or to her directly or both. The address on the letter is to her. Beyond that, I don't know. I heard that it was only sent to her in the oral argument this morning. Otherwise, I don't have any information. I'm not sure that's accurate. I'd have to go back and look at the letter and the record. Well, the letter will tell you that it was sent to her. But that's not conclusive on the matter. I mean, she admits she got it. She admits she understood she was offered her job back. My question is not that. My question is whether or not you should have sent it directly to her, if, in fact, that's what happened. I appreciate the question. I'm not sure it changes the analysis on the issue. That's before the court. I mean, simply put, Comcast makes this unconditional offer of reinstatement to her. She doesn't respond, doesn't take the offer, which is inconsistent with saying I want my job back and I can work.  If she's responding or not responding based on her own understanding of what she ought to do, that may not be an appropriate understanding of its effect on the lawsuit. Well, I don't think that there's any dispute here that Plaintiff's counsel knew about the unconditional offer of reinstatement. I invite the court to ask about that on rebuttal. But, you know, notably, notwithstanding the letter from Plaintiff's counsel saying she can work, Plaintiff testified at her deposition in 2017, again, over a year after she was administratively separated from Comcast, that that wasn't true, that her understanding was she couldn't work at the time of the unconditional offer of reinstatement. She hadn't been released to return to work at that point in time, and, in fact, never was, even up to the time of the ruling on summary judgment. Didn't she testify that she had physically recovered by 2016 but was psychologically unable to work, in part as a result of the discharge, which would also explain the apparent contradiction between the receipt of benefits and her position in this litigation? I appreciate that point, Your Honor. The difficulty with that is it really, and I hate to put it this way, but it amounts to sort of a self-serving declaration that contradicts the evidence and the record in this case. All of the medical evidence that's before the court on this case shows that she had these emotional symptoms going back to March when she suffered this brain hemorrhage. She had depression. She had difficulty dealing with the effects of those symptoms. There's no medical evidence saying the reason she couldn't work is because of emotional distress caused by Comcast. As I read her deposition on the question as to why she did not accept the letter, as I read it, she said, because they'd been mean to me and I didn't want to work for them anymore, not that I was disabled. Well, in her deposition, the same deposition, she also said that she couldn't have worked at that point in time, that it wasn't true that she was able to return to work. And as to the issue of they were mean to me, why would I want to go back there? Elsewhere in her deposition testimony, plaintiff admitted quite clearly that she loved working at the site she worked at, at the store. She still went and visited her coworkers there. She liked working with them. There was no reason to believe that that was going to be an unpleasant work environment for her. She felt that the leave consultant she was dealing with at Comcast, Ms. Loewenberg, treated her unfairly, and she said she understood that Ms. Loewenberg was no longer employed by Comcast at that point in time. So it doesn't really pan out, to be honest with you. And this court has rejected similar types of declarations submitted in opposition to a motion for summary judgment, kind of to create a triable issue of fact, and that's what we have here with the declaration of Ms. Rodriguez. She says even the declaration is contradictory. It says on the one hand, I could have returned to work in January of 2016. That's contradicted by all of the medical evidence in the record, all of her doctors, all of the medical information that Comcast had, and by other admissions in her depo testimony. And she elsewhere says, well, the reason I didn't want to go back to work is because Comcast didn't treat me fairly. Thank you, counsel. You're over for your time. Thank you. Thank you, Judge Miller. You're actually correct on two major issues. One is it's not the conduct after the termination. It's not an issue. You're looking at what happens before. And you're also right on the issue of her not being able to work. This termination after 25 years totally devastated her, and the record is full of the counseling she got through Medi-Cal as a result of that. Counsel here just made reference to a letter from an attorney. I never wrote any letter. What's true is that Ms. Rodriguez did heal, and she went to the Comcast store. Her manager testified that when she came to the Comcast store, she was seen and she was getting better, and that's at 4ER-610-614 and 4ER-599. What choice did she have? Counsel says they tried to accommodate. How? There was no medical evidence to show that it was going to be indefinite at all. And what did they do? They say, well, we'll see if she can work at a sedentary job. She couldn't work at a sedentary job because she couldn't work at all at that point, and that was very clear. Comcast determined it was indefinite, but you have to understand, too, they say that made several attempts to accommodate. What they did is it was six months and then later six months. And when they asked for six months initially, they gave it two months, and they sent another certification, said, tell us again, tell us again. So they did not honor that. What do you do with the Social Security Administration classification? Am I in the medical improvement not expected? Well, if you look on 61, this is the Social Security form. It says, if you go to work, we have special rules that let us continue your cash payments and health care coverage. And as I told the court, when she went to Social Security later to find out what the rules were, she said, can I work and still receive Social Security benefits? And she was told, if you get a job, you can still get permanent disability, but you cannot make more than $840 a month. You know, I'm not sure that's responsive to my question. MINE stands for medical improvement not expected. That suggests that she's submitted evidence to them that is inconsistent with I'm going to get better. Well, you're talking about the Social Security doctor? Yes. Well, the Social Security determination. Determination. They classify her as M-I-N-E. Those are standardized forms. And nowhere you'll see in Social Security application do they ask anything about whether you can be accommodated or work. It's simply at the time, are you disabled? And clearly, you know, Comcast had a policy, a written policy. You could have one year of leave. And that was her understanding. But then they later changed it to six months. And when I questioned them as to why that happened, they never mentioned it. Is the narrative that I heard from your adversary correct, that her short-term medical disability payments were resumed? No, they were not. That was the whole point. They cut her off. In other words, I heard the story that's not true? That is not true. April 28th, the day after her surgery, it's cut off. And then later on, they say, you know, it's in the keynote system that this was done in error. But there's no evidence in the record anywhere that they ever gave her the money. She didn't get her vacation pay or anything else until well after she was terminated. Hang on. You said there's no evidence in the record. Do you know outside the record? Yes. Ms. Rodriguez had no money at all. That's why she applied. Please, I'm asking a very specific question, not whether she didn't have any money. I'm asking a very specific question. Do you know whether based on what's in the record or outside the record, was she ever given retroactively short-term disability payments that had been erroneously cut off? I never saw any evidence of that in the record at all. I did not ask only as to the record. Do you know one way or the other, record or not record? She did not get it. So you're just saying we heard something that's not true? Correct. Okay. Thank you, Counsel. Thank you, Your Honor. The case has started to be submitted for decision.
judges: Thomas, W. Fletcher, Miller